# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MEGAN VOEKS, Individually, and as Representative of the Estate of JULIE VOEKS, and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-1613 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| OUT TECH., INC. d/b/a BUREAU OF ACCOUNT MANAGEMENT, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA"), and state common law.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is the daughter of Julie Voeks, who passed away on March 9, 2020.

5. Julie Voeks (a.k.a. Julie Francis Voeks) was a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

6. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, § 421.301(17), Wis. Stats., in that she engaged in a consumer transaction.

7. Julie Voeks was a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

8. Julie Voeks was also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer credit transaction.

9. Plaintiff brings her claims in her individual capacity as well as representative of Julie Voeks' estate.

10. Plaintiff has standing to bring her claims in her individual capacity because she is in the "zone of interest" of persons protected by the FDCPA. *See O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011) (the FDCPA protects "consumers and those who have a special relationship with the consumer – such that the Act is still protecting the consumer—from statements that would mislead these consumers") (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1997) (en banc) (holding that executrix could sue because the Act applies to anyone who "stand[s] in the shoes of the debtor [with] the same authority as the debtor to open and read the letters of the debtor"); *Schmitz v. Valentine & Kebartas, LLC*, 2019 U.S. Dist. LEXIS 209489 (E.D. Wis. Dec. 5, 2019); *Hill v. Woods*, 2017 U.S. Dist. LEXIS 18413, *15 (S.D. Ind. February 9, 2017) (noting that a POA would have standing to bring FDCPA claims); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 1000-1001 (E.D. Wis. 2013) (holding a husband had standing to bring FDCPA claims after having read a letter addressed to his wife because "the plain language of 15 U.S.C. § 1692e is not limited in scope to debtors; rather, it prohibits debt collectors from using 'any false, deceptive, or misleading representation or means

2

in connection with the collection of any debt.'"); *Swearingen v. Portfolio Recovery Assocs.*, 892 F. Supp. 2d 987 (N.D. Ill. 2012); *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313, at *7-8 (N.D. Ill. Mar. 19, 1997).

11. Plaintiff additionally brings the claims in her capacity as representative of the estate of Julie Voeks. Plaintiff has standing to bring claims in such capacity because the relief sought is remedial and not penal in nature. *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993); *Carter v. First Nat'l Collection Bureau, Inc.*, No. 15-cv-1695, 2017 U.S. Dist. LEXIS 190164, at *5 n.3 (S.D. Tex. Nov. 16, 2017); *see also Dickens v. GC Servs.*, 2018 U.S. Dist. LEXIS 173071 (M.D. Fla. Oct. 2, 2018) (holding a substituted plaintiff to be an adequate class representative).

12. The Seventh Circuit and other circuits have stated that the FDCPA is remedial in nature. *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003); *Tolentino v. Friedman*, 46 F.3d 645, 650-51 (7th Cir. 1995); *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 740-41 (7th Cir. 2004) (Wood, J. *dissenting*); *see also Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA, like the Truth in Lending Act, is a remedial statute, it should be construed liberally in favor of the consumer.") (internal citation omitted); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993):

> The [Consumer Credit Protection] Act [of which the FDCPA is a part] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

3

13. Numerous courts have determined that claims brought under consumer protection statutes, like the FDCPA and the Truth in Lending Act ("TILA"), survive the death of the consumer plaintiff. *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 415 (7th Cir. 1980) (holding that a TILA claim survived death), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir. 1982); s*ee also Cuoco v. Palisades Collection, LLC*, Civil Action No. 13-6592 (JLL), 2014 U.S. Dist. LEXIS 31660 (D.N.J. Mar. 11, 2014); *Bracken v. Harris & Zide, L.L.P.*, 219 F.R.D 481, 484-85 (N.D. Cal. 2004) (holding that claims under the Fair Debt Collection Practices Act are analogous to claims under TILA, and are remedial claims that survive the death of the defendant); *Jewett v. Bishop, White Marshall & Weibel, P.S.*, No. CV 12-10142 PSG (MRWx), 2013 U.S. Dist. LEXIS 181608, 2013 WL 6818245, at *3 (C.D. Cal. Feb. 25, 2013) (holding that an FDCPA claim survived death of plaintiff); *James v. Home Constr. Co.,* 621 F.2d 727, 729-30 (5th Cir. 1980) (same); see also *Sw. Sunsites v. Fed. Trade Comm.*, 785 F.2d 1431, 1439 (9th Cir. 1986) (noting the FTC's "broad remedial power").

14. Defendant Out Tech., Inc. d/b/a Bureau of Account Management ("BAM") is a foreign business corporation with its principal offices located at 3607 Rosemont Avenue, Suite 502, Camp Hill, Pennsylvania 17011.

15. BAM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

16. BAM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

17. BAM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

4

## FACTS

18. On or around April 23, 2020 BAM mailed to Plaintiff a debt collection letter addressed to "Julie Francis Voeks" regarding an alleged debt owed to "Select Medical Corporation." A copy of this letter is attached to this complaint as Exhibit A.

19. Upon information and belief, the alleged debts referenced in Exhibit A were incurred as the result of a transaction for personal medical services with an agreement to defer payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 2014CV5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

20. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

22. Upon information and belief, Exhibit A is the first written communication BAM mailed to Plaintiff regarding the alleged debt referenced therein.

23. CCI mailed Exhibit A to Plaintiff in a "window envelope" – an envelope containing a window hole or a transparent, "glassine" window displaying Plaintiff's name and address and CCI's return address. A copy of the envelope is attached to this complaint as Exhibit B.

5

24. Also printed on <u>Exhibit A</u>, immediately below BAM's return address and in bold italic font, is the language, "PERSONAL & CONFIDENTIAL".

25. The "PERSONAL & CONFIDENTIAL" language was visible through the window. It appears as follows:

```
PERSONAL & CONFIDENTIAL
JULIE FRANCIS VOEKS
517 E RAWSON AVE
OAK CREEK WI  53154-1509
```

26. 15 U.S.C. § 1692f(8) expressly prohibits:

> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

27. Like 15 U.S.C. § 1692f(8), Wis. Stat. § 427.104(1)(e) prohibits debt collectors from disclosing "information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information."

28. The Seventh Circuit recently held that the plain language of 15 U.S.C. 1692f(8) prohibits debt collectors from printing *any* extraneous text in a way that it is visible on an envelope containing a dunning letter. *Preston v. Midland Credit Mgmt.*, No. 18-3119, 2020 U.S. App. LEXIS 1775 *11 (7th Cir. Jan. 21, 2020).

29. *Preston* addressed a dunning letter in an envelope containing the language "TIME SENSITIVE DOCUMENT." *Id.* at *1.

30. The Seventh Circuit held that any extraneous language visible on an envelope containing a debt collection letter violates 15 U.S.C. § 1692f(8) as a matter of law. *Id.* at 11:

> The first sentence of § 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. That prohibition is then followed

6

by a specific list of conduct that violates the section. Among those acts specifically listed is the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer ... except that a debt collector may use his business name" under prescribed circumstances. 15 U.S.C. § 1692f(8). On its face, the prohibition is clear: use of any language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).

*Id.* at 11.

31. In *Preston*, the Seventh Circuit expressly rejected the "benign language exception" followed in some other circuits, holding that Congress created a bright-line rule:

> The statutory language [of § 1692f(8)] does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language. …
>
> In providing certainty, this provision furthers the FDCPA's overall purpose of "eliminat[ing] abusive debt collection practices by debt collectors" and "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Id.* at *15-18; *cf. Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004).

32. As in *Preston*, the "PERSONAL & CONFIDENTIAL" language on Exhibit A violates the plain language of 15 U.S.C. § 1692f(8). *Preston*, 2020 U.S. App. LEXIS 1775 at *11.

7

33. There is no artificial distinction between language printed directly on an envelope itself and language printed on the dunning letter that is visible through the envelope's glassine window. The purpose of 15 U.S.C. § 1692f(8) is to prohibit the disclosure of information to third parties. Indeed, the "TIME SENSITIVE DOCUMENT" at issue in *Preston* was actually printed on an internal envelope that was itself visible through the glassine window of the envelope that actually contained the postage. *Preston*, 2020 U.S. App. LEXIS 1775, at *3; *see also, Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDPCA—the invasion of privacy."); 15 U.S.C. § 1692c(b) (prohibiting debt communication with third parties other than those specified in the statute).

34. Further, it is not difficult for a debt collector to comply with 15 U.S.C. § 1692f(8); a debt collector must simply avoid printing extraneous information on the envelopes or allow it to show through the glassine windows of envelopes.

### The FDCPA

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount,

8

or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries.");*Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also, Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute") (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage

9

Case 2:20-cv-01613-BHL Filed 10/22/20 Page 9 of 15 Document 1

consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37. Allowing language indicating that the envelope contains a debt collection letter to be visible to the public injures or risks injury to interests expressly protected by Congress in the FDCPA. As the Seventh Circuit held in *Preston*:

> This approach provides certainty to debt collectors and avoids the problem of having to decide on a case by case basis what language or symbols intrude into the privacy of the debtor or otherwise constitute "an unfair or unconscionable means to collect or attempt to collect a debt." [15 U.S.C.] § 1692f. Congress wrote into the law a bright-line rule with respect to markings on envelopes sent to debtors and authorized the award of damages to debtors if debt collectors violate the plain language of § 1692f(8).

2020 U.S. App. LEXIS 1775 at *17 (quoting *Palmer v. Credit Collection Servs., Inc.* 160 F. Supp. 3d 819, 822-23 (E.D. Pa. 2015)); *see also Douglass*, 765 F.3d at 303-04; *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls

10

squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

### *The WCA*

38. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

39. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

40. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

41. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors

11

of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

42. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

43. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

44. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

45. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*; *see also, Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15, 2019 U.S. Dist. LEXIS 209489, at *6 (E.D. Wis. Dec. 5, 2019).

46. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the

customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information. This paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute."

47. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

48. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

49. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

50. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

51. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

52. Exhibit A contains extraneous text, visible on the outside of the envelope through the window, which states: "PERSONAL & CONFIDENTIAL."

53. The use of such extraneous text on an envelope containing a dunning letter, or visible on the front of the envelope through a window, violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 2020 U.S. App. LEXIS 1775 *15-18.

54. Defendant violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT II – WCA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Exhibit A contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "PERSONAL & CONFIDENTIAL".

57. The use of such extraneous text on an envelope containing a dunning letter, or visible on the front of the envelope through a window, violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 2020 U.S. App. LEXIS 1775 *15-18.

58. Defendant violated Wis. Stat. §§ 427.104(1)(e), 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

59. Plaintiff bring this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) mailed between October 22, 2019 and October 22, 2020, inclusive, (d) not returned by the postal service.

60. The Class is so numerous that joinder is impracticable.

61. Upon information and belief, there are more than 50 members of the Class.

62. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the FDCPA.

63. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

14

64. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 22, 2020

**ADEMI, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com